UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

CASE NO.: CV-14-161-M-DWM

JOHN TALMAGE, MONTANA
DIAMOND AIRE, INC., and
RJT PROPERTIES, LLC,

    Plaintiffs,

v.

ACE PROPERTY AND CASUALTY
INSURANCE COMPANY,

    Defendant.

_____/



FILED

MAY 16 2014

Clerk, U.S. District Court
District Of Montana
Missoula

## COMPLAINT

Plaintiffs, JOHN TALMAGE, MONTANA DIAMOND AIRE, INC., and RJT PROPERTIES, LCC (hereinafter "Plaintiffs"), hereby file their Complaint against Defendant, ACE PROPERTY AND CASUALTY INSURANCE COMPANY ("ACE"), and allege as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff, John Talmage ("Talmage"), is a resident of Kalispell, Montana. Talmage owns and operates Montana Diamond Aire, Inc. and RJT Properties, LLC.

2. Plaintiff, Montana Diamond Aire, Inc. ("Diamond Aire") is an aviation business incorporated under the laws of Montana and doing business in the City of Kalispell. Diamond Aire sells fuel to Kalispell Municipal Airport users and manufactures, sells, and installs airplane modification parts and kits.

3. Plaintiff, RJT Properties, LLC ("RJT"), is a limited liability company formed under the laws of Montana and is the record owner of real property located adjacent to the Kalispell Municipal Airport at 1893 Airport Road, Kalispell, Montana ("the Property"). RJT leases the Property to Diamond Aire and has done so since 2003.

4. Defendant ACE is a corporation formed under the laws of Pennsylvania having its principal place of business in Pennsylvania. ACE is registered to transact insurance in Montana as a foreign corporation and has appointed and authorized the Commissioner of Securities and Insurance to receive service of process on ACE's behalf in Montana.

5. Jurisdiction is proper in this Court pursuant to 28 USC § 1332 because the matter in controversy exceeds $75,000 and the parties are citizens of different states.

6. Venue is proper in the Missoula Division of the District of Montana pursuant to 28 U.S.C. § 1391 because the events giving rise to the causes of action alleged herein occurred in Flathead County, Montana.

**BACKGROUND**

7. In late 2003, the City of Kalispell (the "City"), acting through the Kalispell City Airport Advisory Board (the "Board"), caused a fence with a gate to be erected between Plaintiffs' Property and the airport, impairing access to Plaintiffs' buildings and aircraft fuel station.

8. As a result, Plaintiffs filed suit against the City and the Board asserting: (I) unreasonable interference with use of easement; (II) private nuisance; (III) tortious interference with business prospects; (IV) infliction of emotional distress; and (V) punitive damages. A copy of the Complaint is attached hereto as Exhibit A.

9. Despite Plaintiffs' request that the City or Board remove the fence, the fence remained and continued to impair access to Plaintiffs' Property and businesses.

10. Between 2008 and 2010, the City and Board, acting independently or through Airport Manager, Fred Leistiko ("Leistiko"),[1] negligently inflicted emotional distress on Talmage, slandered and disparaged Plaintiffs, and engaged in conduct that damaged the Property and further injured the Plaintiffs' businesses, reputation, and use and enjoyment of the Property. Some of these acts are described below:

    a. In 2008 the ACE Insureds ordered destructive environmental tests to be conducted at the Property. The testing damaged Plaintiffs' property and disrupted Plaintiffs' business.

    b. Following this environmental testing, the ACE Insureds mistakenly and falsely represented to airport users, members of the Airport Property Owners, and Plaintiffs' banker that Plaintiffs' Property was contaminated and that Plaintiffs were contaminating the airport. As a result of this slander, Plaintiffs were disgraced, degraded and shunned, and Plaintiffs suffered significant business losses.

    c. Further, the ACE Insureds mistakenly and falsely reported to Plaintiffs' banker that Plaintiffs were falling out of compliance with the Department of Environmental Quality and losing eligibility for important federal programs that would result in a substantial devaluation of Plaintiffs' Property. The ACE Insureds further mistakenly and falsely reported to Plaintiffs' banker that due to contamination, Plaintiffs and/or the bank could be liable for $900,000

---

[1] The City, Board, and Leistiko shall be collectively referred to herein as the "ACE Insureds", "ACE Insured Defendants" or the "AI Defendants".

209925_1

3

in clean-up costs. As a result of this slander, the ACE Insureds placed Plaintiffs' credit-worthiness at issue.

      d.      The ACE Insureds mistakenly and falsely reported to airport users and members of the Airport Property Owners that Plaintiffs were in serious financial trouble and having solvency problems. As a result of this slander, Plaintiffs were prejudiced in their occupation and trade and suffered significant business losses.

      e.      During the ACE Insureds' efforts to upgrade the Kalispell City Airport to "B2" status, they misinterpreted Federal Aviation Administration ("FAA") regulations and mistakenly and falsely represented to airport users and members of the Airport Property Owners that Plaintiffs would not be permitted to operate or do business through-the-fence. The ACE Insureds further mistakenly and falsely represented to airport users and members of the Airport Property Owners that Plaintiffs would soon be out of business. As a result of this slander, Plaintiffs were prejudiced in their occupation and trade and suffered significant business losses.

      f.      Further, while attempting to upgrade the Kalispell City Airport to "B2" status, the ACE Insureds unintentionally discriminated against Plaintiffs and further impaired physical and visual access to the Property.

11.      As a result of the aforementioned acts, the ACE Insureds materially injured Plaintiffs' businesses, which relied on fuel sales income to fund overhead, research, development, and other costs associated with producing, selling, and installing modification parts and kits.

12. Accordingly, in May of 2010, Plaintiffs filed an Amended and Second Amended Complaint adding Airport Manager Leistiko as a defendant. The Second Amended Complaint alleged (I) unreasonable interference with use of easement; (II) private nuisance; (III) tortious interference with business prospects; (IV) infliction of emotional distress; (V) inverse condemnation; and (VI) slander. Plaintiffs asserted that they had "suffered damages as a result of the negligence, misconduct, and wrongful acts of the Defendants." See paragraph 8 of the Second Amended Complaint attached hereto as Exhibit B.

13. In reality, as a result of the AI Defendants' negligent conduct, Plaintiffs suffered business losses in excess of $2.6 million.

14. Further, between 2008 and 2010, as a result of the AI Defendants' negligent conduct, Talmage suffered severe emotional distress, including significant stress, aggravation, anxiety, depression, loss of sleep, loss of appetite (including severe weight loss), elevated blood pressure, joint pain and muscle soreness, and cardiovascular irregularities.

## THE ACE POLICIES

15. In 2007, the City of Kalispell purchased an "Airport Owners and Operators General Liability Policy" from ACE. This policy was issued and renewed, as follows:

    a. ACE Policy Number AAP N02200806 001 was issued to the City for the period of February 11, 2007, to February 11, 2008, and is attached as Exhibit C.

  b. ACE Policy Number AAP N02200806 002 was issued to the City for the period of February 11, 2008, to February 11, 2009, and is attached as Exhibit D.

  c. ACE Policy Number AAP N02200806 003 was issued to the City for the period of February 11, 2009, to February 11, 2010, and is attached as Exhibit E.

  d. ACE Policy Number AAP N02200806 004 was issued to the City for the period of February 11, 2010, to February 11, 2011, and is attached as Exhibit F.

16. The policies provided coverage, in relevant part, for bodily injury, property damage, personal injury, and advertising injury liability with limits of $5,000,000.

17. The policies insure the City of Kalispell, its elective or appointive officers, members of any board, commission, or agency, and employees with respect to "airport operations." Policy p. 12 and 13.

18. The policies contain a Separation of Insureds provision, stating "Except with respect to the LIMITS OF INSURANCE (SECTION IV), and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies separately to each insured against whom claim is made or "suit" is brought."

19. The policies define "Airport operations" as "the ownership, maintenance, use or provision of premises, services and facilities necessary or incidental to the operation of the 'airport.'" Endorsement No. 3, AAP 234 (11/99).

20. Coverage A. Bodily Injury And Property Damage Liability provides, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages…". Policy, p. 2.

21. "'Bodily Injury' means: a. Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; or b. Fright or mental anguish sustained by a person." Policy, p. 19.

22. "'Property Damage' means: a. Physical injury to tangible property, including all resulting loss of use of that property. . . b. Loss of use of tangible property that is not physically injured." Policy, p. 22.

23. The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy p. 21. "Accident" is not defined.

24. Coverage B. Personal And Advertising Injury Liability provides, "[w]e will pay those sums that you become legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. . .". Policy, p. 6.

25. The policies define "personal injury" in relevant part as "injury, other than 'bodily injury,' arising out of one or more of the following offenses… c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e.

Oral or written publication of material that violates a person's right of privacy; f. Unintentional discrimination . . .". Policy, p. 22.

26. The policies define "advertising injury" in relevant part as "injury arising out of one or more of the following offenses: a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods or services; b. Oral or written publication of material that violates a person's right of privacy . . .". Policy p. 19.

27. The policies also contain an endorsement, the "Airport Limited Enhanced Coverage Endorsement," form AAP 234 (11/99), which provides in relevant part:

> 3. The following is added to Condition 2 – (Duties in the Event of Occurrence, Claim or Suit.)
>
> e. Knowledge of an occurrence by your agent, servant or employee shall not constitute knowledge by you, unless an executive officer, partner, proprietor or an employed risk manager has received such notice.
>
> 4. Condition 6 – (Representations) is amended to include:
>
> d. Your unintentional failure to disclose facts shall not be a basis for denial of any coverage, provided that it is corrected as soon as it is discovered by an executive officer, partner, proprietor or employed risk manager.
>
> e. Your inadvertent failure to submit reports or contracts or comply with other notices, except those required under Condition 2, shall not invalidate this insurance, provided it is corrected as soon as it is discovered by an executive officer, partner, proprietor or employed risk manager."

28. By letter dated March 28, 2013, the City of Kalispell notified ACE of the Second Amended Complaint and tendered same for defense and indemnification on

behalf of all AI Defendants. The May 28 letter attached the Complaint, Amended Complaint, and Second Amended Complaint, and stated in part:

> These claims arise out of the City of Kalispell's assessment of user fees on the Plaintiffs, the erection and maintenance of a fence on airport property, and the alleged making of defamatory statements by the airport manager, Fred Leistiko. All of these activities constitute "airport operations" as that term is defined in the Policy. Although not plead as a separate claim, Plaintiffs have represented that their damages are the result of the City of Kalispell's negligence (See Second Amended Complaint, ¶ 8, attached as exhibit "A").

29. The Second Amended Complaint alleged facts within the ACE insurance policies' coverage. As such, ACE had a duty to defend the AI Defendants against the Second Amended Complaint in Cause No. DV-04-282(B) (the "Lawsuit").

30. On March 29, 2013, ACE's Aerospace Claims Manager, Sean Finnegan ("Finnegan") requested "ALL information related to this matter be sent to us ASAP so that we can make an accurate coverage assessment. This includes all reports, internal documents, the entire litigation file, all pleadings, motions, etc."

31. The AI Defendants promptly supplied all pleadings, depositions, and discovery to ACE.

32. Over the next several days, Finnegan spoke with the City of Kalispell's counsel, and she supplied any additional information requested.

33. The information and documents provided to ACE further demonstrated that the Lawsuit brought by Plaintiffs against the AI Defendants exposed them to liability covered by the ACE policies, such that ACE had a duty to defend and indemnify the AI Defendants.

34. On April 23, 2013 Plaintiffs wrote to the AI Defendants, offering to settle the Lawsuit and release them from liability for claims asserted therein in exchange for a partial payment of covered damages well within ACE's policy limits.

35. The AI Defendants notified ACE of the settlement demand, and ACE advised that it required additional time to complete its coverage analysis. Additional time was provided.

## ACE'S DECLINATION OF COVERAGE AND DENIAL OF A DEFENSE

36. On May 3, 2013, ACE denied coverage and refused to defend and indemnify the AI Defendants against Plaintiffs' claims in the Lawsuit.

37. ACE acted with actual malice in denying coverage and refusing to defend and indemnify the AI Defendants with knowledge of facts or intentionally disregarding facts giving rise to its coverage, defense, and/or indemnity obligations. ACE deliberately denied coverage and refused to defend the AI Defendants with disregard or indifference to the high probability of injury to the AI Defendants that would occur if the AI Defendants were not provided with defense or indemnity coverage due under the applicable policies.

38. ACE's refusal to defend and indemnify the AI Defendants constitutes a breach of the insurance policies. As a result of ACE's breach of contract, the AI Defendants were forced to pay defense costs and were exposed to potential financial risk for covered and non-covered counts, including for amounts exceeding ACE policy limits.

39. ACE's breach of the duty to defend constitutes a material breach of the policy, which relieved the AI Defendants of all obligations under the ACE policies with respect to the Lawsuit filed by Plaintiffs.

## SETTLEMENT AND ASSIGNMENT

40. Following ACE's wrongful refusal to defend and indemnify its insureds in breach of the ACE policies, the AI Defendants entered into a compromise settlement agreement with Plaintiffs. The AI Defendants thereby ended the costly defense of the Lawsuit and eliminated their exposure to further financial risk. As part of the settlement, Defendants confessed judgment in the amount of $1,500,000 and assigned their contractual and extra-contractual claims and rights of action against ACE to Plaintiffs.

41. Plaintiffs were third party beneficiaries under the ACE policies. Plaintiffs bring this action in that capacity, and also in the capacity of first party insureds under the policies, pursuant to the assignment.

42. On October 4, 2013, the Court held a hearing for the purpose of reviewing the reasonableness of the parties' settlement. At the hearing, Plaintiffs presented evidence that as a result of the AI Defendants' negligent conduct, including the AI Defendants' slander and infliction of emotional distress, Plaintiffs suffered over $2.6 million in damages. The Court took the matter under advisement.

43. On December 4, 2013, the Court issued its Findings of Fact and Conclusions of Law, finding: the settlement reached between the parties was reasonable; there was no evidence of collusion among the settling parties; and Plaintiffs presented prima facie evidence from which a jury could have concluded Plaintiffs were entitled to substantial damages, including damages for Talmage's emotional distress. The Court approved the $1.5 million settlement and entry of Judgment against the AI Defendants. The Judgment does not exceed the ACE policy limits.

44. All conditions precedent to this action have been satisfied or waived.

## COUNT I: REQUEST FOR DECLARATORY JUDGMENT ACTION

45. Plaintiffs restate and reallege all allegations above.

46. Plaintiffs are entitled to and seek relief under the Montana Uniform Declaratory Judgment Act, MCA §27-8-102.

47. The Plaintiffs request a declaratory judgment that:

   a. ACE had a duty to defend and indemnify the AI Defendants under the terms of the ACE policies and Montana law;

   b. ACE breached that duty;

   c. ACE is liable for the Judgment entered against the AI Defendants, plus interest, costs, and attorney's fees; and

   d. ACE waived policy defenses by refusing to defend and indemnify the AI Defendants.

## COUNT II: BREACH OF CONTRACT

48. Plaintiffs restate and reallege paragraphs 1 - 46 above.

49. ACE had a contractual obligation to defend the AI Defendants against the Lawsuit.

50. ACE breached its insurance contracts by refusing to defend the AI Defendants.

51. ACE had a contractual obligation to indemnify the AI Defendants.

52. ACE breached its insurance contracts by refusing to indemnify the AI Defendants.

53. As third party beneficiaries under the policies, and also as first party insureds by virtue of the assignments from the AI Defendants, Plaintiffs are entitled to all

remedies and damages allowed under the law for each of ACE's breaches of its duties to defend and indemnify.

54. Plaintiffs are entitled to judgment against ACE in the amount of the Judgment entered against the AI Defendants in the Lawsuit.

55. Plaintiffs are entitled to interest on said Judgment at the Montana statutory rate of 10% per annum, from the date the parties entered into settlement, June 12, 2013.

56. Plaintiffs were required to institute litigation to recover benefits under ACE's insurance policies, and Plaintiffs are entitled to recover their attorney fees and costs herein.

### COUNT III: BAD FAITH

57. Plaintiffs restate and reallege Paragraphs 1-55 above.

58. The actions of ACE in refusing to defend the AI Defendants violates MCA 33-18-201 and 242. The actions of ACE give rise to punitive damages under MCA 33-18-242 and 27-1-221.

**WHEREFORE**, Plaintiffs pray for judgment against ACE as follows:

1. That the Court determine and declare that ACE had a duty to defend and indemnify the AI Defendants under its policies, that its refusals to defend and indemnify constituted a breach of the insurance contract, and that its refusals to defend and indemnify waived the policies' limits and coverage defenses;

2. For judgment against ACE in the amount of the judgment against the AI Defendants in the Lawsuit;

3. For reasonable and necessary costs and attorney fees incurred in prosecuting this action and establishing coverage;

4. For all pre-judgment and post-judgment interest allowed by Montana law, including interest on the Judgment against the AI Defendants at the Montana statutory rate of 10% per annum from the date of that Judgment until paid in full;

5. For any available special damages;

6. For any available general damages;

7. For punitive damages; and

8. For such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues triable in this cause.

**DATED** this 12 day of May, 2014.

_____
James D. Moore
Montana Bar No. 1070
Email: moorelaw@centurytel.net
30 5th Street East, Suite 201
P.O. Box 116
Kalispell, Montana 59903
Tel: (406) 755-8332
Fax: (406) 755-8339

*Attorney for Plaintiffs*